UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER PIRACHA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL,<br><br>　　　　Defendant. | Case No. 17-cv-00129-JST<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 14, 17 |

Plaintiff Jennifer Piracha seeks judicial review of the Social Security Administration Commissioner's[1] denial of her application for Social Security Disability Insurance ("SSDI"). Before the Court are Piracha's motion for summary judgment, ECF No. 14, and the Commissioner's cross-motion for summary judgment, ECF No. 17. The Court will deny Piracha's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

**I.　BACKGROUND**

　**A.　Factual History**

Piracha claims that her disability and inability to work began on July 29, 2012 when she fractured her left ankle. AR 155. Piracha was then 50-years old and had been working as a preschool teacher, sales attendant, and caretaker. AR 74, 80.

Piracha attributes the majority of her disability to the osteoarthritis in her left ankle. On

---

[1] Although Berryhill is no longer Acting Commissioner of the agency, "[i]n accordance with the agency's Order of Succession, [she] continues to lead the Social Security Administration as [it] await[s] the nomination and confirmation of a Commissioner." Nancy A. Berryhill, Deputy Commissioner for Operations, https://www.ssa.gov/agency/commissioner.html. The position of Commissioner is currently vacant.

July 31, 2012, Piracha underwent ankle surgery, and on May 6, 2013, she had the related hardware removed. AR 231, 330. The record indicates that in January 2013 her ankle's "range of motion [was] within normal limits;" in February 2013 she had "5/5 strength in all ankle quadrants bilaterally;" in June 2013 her fractures were "[h]ealing or healed;" and after August 2013 she rarely sought treatment for her ankle. AR 309, 318, 334, 348-372. The record indicates, however, that Piracha nonetheless consistently reported pain to her physicians from November 2012 to December 2013. See, e.g. AR 273, 276, 313, 322, 332, 345, 360.

Piracha also claims disability based on a knee injury. Shortly after her ankle surgery, Piracha's doctor advised her to try therapeutic exercises including wall squats and leg lifts against a wall. AR 258. On December 5, 2012, Piracha notified her doctor that she heard a crack in her knee when doing the leg exercises and started experiencing pain. AR 276-277. Piracha continually reported knee pain to physicians from December 2012 to April 2013. See, e.g. AR 307, 313, 322.

The record indicates that Piracha's daily activities during this time included yard work, simple cooking, shopping, taking walks, visiting friends, using a computer, driving, reading, and paying bills. AR 323, 56-59.

### B.    Administrative History

Piracha applied for SSDI on June 11, 2013. AR 74. The Commissioner denied her applications both initially and upon reconsideration. AR 92, 101. Piracha timely requested a hearing before an Administrative Law Judge (ALJ) and hired an attorney to appear at the hearing by video. AR 106, 38.

After the March 3, 2015 hearing, the ALJ conducted the five-step evaluation process to determine if Piracha was disabled and entitled to benefits. See, 20 C.F.R. § 404.1520.[2] The ALJ concluded that Piracha met the first two requirements. At step one, the ALJ found that Piracha

---

[2] The ALJ will find the claimant disabled if the claimant (1) is not presently working in a substantially gainful activity, (2) has a severe impairment (3) that meets or is equal to one of the impairments specified in Social Security regulations, (4) is not able to do any past work, and (5) is not able to do any other work. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citation omitted).

2

had not engaged in substantial gainful activity since July 29, 2012. AR 27. At step two, she found that Piracha's osteoarthritis with a history of fracture and surgery amounted to a severe impairment, but disregarded Piracha's knee injury because "there [was] no evidence it cause[d] more than minimal work-related limitations." Id. The ALJ then concluded that Piracha did not meet the last three requirements because her impairment did not meet or equal a listed impairment, she could perform her past relevant work, and she could work other jobs. AR 27-28, 30-32. The ALJ determined that Piracha's residual functional capacity (RFC) included light work as defined in 20 C.F.R. § 404.1567(b) with some exceptions.[3] AR 28.

The ALJ denied Piracha benefits on June 22, 2015 and Piracha timely appealed to the Appeals Council on December 15, 2016. AR 32, 1. Piracha submitted new medical evidence to the Appeals Council, but the Appeals Council denied Piracha's appeal in part because the new evidence was dated two months after the ALJ's decision. AR 2. Having exhausted all administrative remedies, Piracha filed this action seeking judicial review of the Commissioner's decision. ECF No. 1 at 1.

## II. JURISDICTION

The Court has jurisdiction to review final decisions of the Social Security Administration Commissioner. 42 U.S.C. § 405(g).

## III. LEGAL STANDARD

A reviewing court can set aside the Commissioner's decision only if the decision is "not supported by substantial evidence in the record or if it is based on legal error." Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1084-1085 (9th Cir. 2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citation omitted). "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992) (citation omitted). Additionally, courts "cannot affirm the decision of an agency on a ground that the agency did not

---

[3] A residual functional capacity is defined by regulation as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

3

invoke in making its decision." Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (citation omitted).

**IV.    ANALYSIS**

Piracha files a motion for summary judgment with remand for another hearing with claims that (1) the ALJ failed to develop the record, (2) the ALJ erroneously discredited Piracha's testimony, and (3) the Appeals Council erroneously rejected new evidence. ECF No. 14 at 4-9. The Commissioner filed a cross-motion for summary judgment and in opposition to Piracha's motion for remand. ECF No. 17 at 1.

**A.    The ALJ's Duty to Develop the Record**

The ALJ "has an independent 'duty to fully and fairly develop the record . . . .'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted).[4] The duty "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001) (citation omitted); see, e.g., Rios v. Berryhill, No. 14-CV-00654-JCS, 2018 WL 905849, at *21 (N.D. Cal. Feb. 15, 2018) (holding that ALJ should have developed record when ALJ minimally relied on records with redacted, crossed out, or obscured items). "ALJ can satisfy this duty in a variety of ways, including "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150.

Piracha argues that the record is ambiguous because it includes a benefits determination from the California Public Employees' Retirement System ("CalPERS"), but does not include the record CalPERS reviewed to make that determination. ECF No. 14 at 4-5. Plaintiff argues that the medical reports CalPERS relied on "likely contain facts that are needed for a complete evaluation of" Piracha's eligibility for benefits. Because Piracha has not obtained these records and placed them before the Court, her argument is speculative. Moreover, "it is only where the

---

[4] This duty is heightened when the claimant is "unrepresented . . . [or] mentally ill and thus unable to protect her own interests." Id. Piracha was represented by a lawyer and there is no evidence that she suffers from a mental illness.

4

record contains ambiguous evidence or the ALJ himself has found the record is inadequate to allow for proper evaluation of the evidence that the ALJ's duty to "conduct an appropriate inquiry" is triggered. Cuestas v. Astrue, No. 3:11-CV-05480-RJB, 2012 WL 1536251, at *7 (W.D. Wash. Apr. 9, 2012), report and recommendation adopted, No. 3:11-CV-05480-RJB, 2012 WL 1537605 (W.D. Wash. Apr. 30, 2012).

Also, the ALJ actively sought whatever information Piracha thought might be helpful. When the ALJ admitted the record into evidence, the ALJ asked Piracha's counsel "[i]s there anything additional?" and Piracha's counsel responded "[n]o, Your Honor." AR 39. On these facts, the Court cannot find that the ALJ failed to comply with the duty to develop the record. See Johnson v. Barnhart, 449 F.3d 804, 808 (7th Cir. 2006).

Therefore, the Court denies Piracha's motion for summary judgment on her claim that the ALJ failed to develop the record. The Commissioner's cross motion for summary judgment is granted.

### B. The ALJ's Credibility Determination

To evaluate subjective pain and symptoms, an ALJ must find objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)). Then, if "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-1015 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The reviewing court must determine whether the ALJ met the specific, clear, and convincing standard. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citations omitted). However, even if the ALJ errs, "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (citations and internal quotation marks omitted).

Here, the ALJ found objective medical evidence of an underlying impairment and did not conclude that there was evidence of malingering. AR 29. Then, the ALJ rejected Piracha's testimony about the severity of her symptoms based on (1) the ALJ's observations during the hearing, (2) Piracha's daily activities, (3) Piracha's inconsistent statements, (4) objective medical evidence, (5) Piracha's medication use, and (6) Piracha's minimal treatment. AR 28-30. Piracha claims that the reasons for discrediting her testimony were not specific, clear, or convincing. ECF No. 14 at 6-8.

### 1. Personal Observations

The ALJ may point to personally observed "symptoms that were inconsistent both with the medical evidence and with other behavior [] exhibited at the hearing." Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999). However, "[t]he fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion . . . ." Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984) (citation omitted).

The ALJ observed that Piracha "had one crutch at the hearing but did not seem to use it much. She was observed to be able to open the door on her own and held her coat in her other arm. She did not appear to have a complete inability to ambulate effectively . . . ." AR 29. However, the ALJ did not explain how these observations were inconsistent with the medical evidence nor other symptoms observed at the hearing. Instead, the ALJ seemed to rely on these observations as if to prove that Piracha did not exhibit manifestations of pain at the hearing. These types of observations are not specific, clear, and convincing reasons for making an adverse credibility determination. Therefore, the ALJ erred when providing personal observations as a reason for discrediting Piracha's pain testimony.

### 2. Daily Activities

An ALJ may assess the claimant's daily activities but "must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citation and internal quotation marks omitted). The ALJ can satisfy this requirement

6

by explaining how daily activities suggest the claimant could participate in a certain type of work. See e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's finding when ALJ listed daily activities and stated "[t]hese activities tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis.").

Piracha primarily argues that the ALJ erroneously discredited her testimony based on her history of doing leg presses. ECF No. 14 at 7-8. There is no support for this argument because there is no indication that the ALJ considered this observation in her credibility assessment. See, AR 27 (finding that Piracha exercised "despite her history of ankle fracture . . . ." when concluding that her knee injury was not a severe impairment).

However, the ALJ did assess Piracha's daily activities and how they could transfer to a workplace setting. The ALJ found that daily activities such as simple cooking, shopping, taking walks, using a computer, driving, and paying bills "do not comport with the claimant's assertions that she has disabling pain, limitation in walking and standing." AR 29. She also found that these "activities are generally consistent with the assigned light residual functional capacity (RFC) I have found in this case." Id. By referencing the RFC finding, the ALJ explained that activities such as simple cooking, shopping, and paying bills are transferrable activities to light work as defined in 20 C.F.R. § 404.1567(b) with some exceptions.[5] Because "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting,'" Orn, 495 F.3d at 639 (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)),

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). Additionally, the ALJ specified exceptions including: "she can lift and carry 20-pounds occasionally and 10-pounds frequently. The claimant can stand and walk 6-hours in an 8-hour day and sit 6-hours in an 8-hour day. She can frequently climb stairs and ramps, and can occasionally climb ladders. She is able to occasionally balance, kneel, crouch and crawl." AR 28.

the ALJ did not err.

### 3. Inconsistent Statements

An ALJ may assess general credibility by considering prior inconsistent statements. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (finding claimant lacked candor because of two inconsistent statements made to doctors about alcohol use). After Piracha's hearing, the ALJ concluded that "[t]he claimant was inconsistent with some details in her testimony." AR 29. The ALJ specified that "[i]nitially, she denied using her boyfriend's pain medication. However, when confronted with evidence in the record that she had previously admitted to doing so [], she said she used his Oxycodone twice." Id. Considering this line of questioning resulted in several differing answers, the ALJ may properly have inferred "that [Piracha's] lack of candor carries over to her description of physical pain." See Thomas, 278 F.3d at 959. The ALJ did not err in basing an adverse credibility in part on a line of questioning where Piracha's answers revealed a lack of candor.

### 4. Objective Medical Evidence

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). An ALJ cannot conclude there is a conflict between subjective complaints and objective medical evidence without specifying reasons. Compare, Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) (finding for claimant when ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination") with Bennett v. Colvin, 202 F. Supp. 3d 1119, 1129 (N.D. Cal. 2016) (finding for Commissioner when ALJ listed medical evidence in support of the ALJ's RFC determination and then summarized reasons for discrediting the claimant's testimony).

When discussing Piracha's medical history, the ALJ concluded that Piracha "testified that she cannot walk on her left foot, but the medical evidence does not show that such a limitation lasted for a year or more." AR 28. The ALJ then thoroughly summarized Piracha's medical

history from her ankle surgery in July 2012, to her x-ray examination in June 2013 that showed "the fracture had healed." AR 29. The ALJ identified specific medical testimony that conflicted with specific parts of Piracha's testimony and did not commit legal error.

### 5. Effectiveness of Medication

The ALJ may consider "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv) (2015).[6] The ALJ found that Piracha "testified that with the use of Tylenol her pain decreases, going from a 7 to a 8 to a 5 out of 10, on a scale of 0 to 10, with 10 being the worst. This indicates her pain is tolerable." AR 28. Furthermore, the ALJ concluded that "[t]here is no ongoing history of pain management treatment to substantiate the claimant's allegations of disabling pain." Id. The ALJ offered specific, clear, and convincing evidence suggesting that Piracha's mild medication was effective in reducing her pain. This was not error.

### 6. Unexplained Minimal Treatment

ALJ's are encouraged to consider "[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(v) (2015). That a claimant's pain was "not severe enough to motivate her to seek [certain] forms of treatment, even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (internal citation and internal quotation marks omitted) (upholding ALJ's finding because claimant did not receive surgery, chiropractic services, nor physical therapy for three to four months). "While there are any number of good reasons for not [seeking treatment], a claimant's failure to assert one . . . can cast doubt on the sincerity of the claimant's pain testimony." Fair, 885 F.2d at 603 (internal citations omitted).

The ALJ found that "[t]here has been minimal medical treatment since August 2013 [], and this indicates that the claimant's ankle fracture has healed completely and she has not had pain and symptoms severe enough to seek further, ongoing and regular treatment." AR 29. The ALJ

---

[6] This regulation was amended on January 18, 2017. The version cited was controlling when Piracha applied for benefits.

9

accurately points to a five month period where Piracha did not seek surgery, physical therapy, nor regular medical treatment.[7] AR 348-372. Moreover, Piracha does not contend, nor does the ALJ find, that Piracha offered a good reason for not seeking treatment. There is no legal error because the ALJ pointed to an unexplained five month period without substantial nor regular treatment.

### 7. Harmless Error

The ALJ did not meet the applicable standard when assessing Piracha's behavior during the hearing. However, she properly assessed Piracha's daily activities, inconsistent statements, objective medical evidence, medication use, and minimal treatment. Because she gave five specific, clear, and convincing reasons for discrediting Piracha's pain testimony, her single erroneous finding is harmless and does not warrant reversal. See, Carmickle, 533 F.3d at 1162. Thus, the ALJ's ultimate credibility determination is still valid. The Court denies Piracha's motion for summary judgment on her claim that the ALJ's adverse credibility finding was legal error. The Commissioner's cross motion for summary judgment is granted.

### C. The Appeals Council's Rejection of New Evidence

"When a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir. 2012). However, the Appeals Council is only required "to evaluate the new evidence 'if it relates to the period on or before the date of the administrative law judge hearing decision.'" Martinez v. Astrue, No. 12-CV-02997-JCS, 2014 WL 310387, at *19 (N.D. Cal. Jan. 28, 2014) (quoting 20 C.F.R. § 404.970(b) (2015)).[8]

Here, the claimant submitted an August 25, 2015 doctor's letter with bone density exam results to the Appeals Council. AR 225. The Appeals Council stated that the new evidence did not affect the ALJ's decision because the "new information [wa]s about a later time." AR 2.

---

[7] In December 2013, Piracha sought a prescription for a few oxycodone and indicated that she had an upcoming orthopedic appointment. AR 368. However, medication is not the same as treatment, and one orthopedic appointment does not amount to regular treatment.

[8] This regulation was amended on December 16, 2016. The version cited was controlling when Piracha applied for benefits.

10

However, osteoarthritis does not suddenly develop. While this report is dated two months after the hearing decision, it relates to the time period before the hearing decision. See, Martinez, 2014 WL 310387, at *19 (finding evidence relating to period because later MRIs allowed for a comparison of the changes to claimant's degenerative disc disease); Oliver v. Astrue, No. 11-04354-LB, 2013 WL 211131 (N.D. Cal. Jan. 16, 2013) (finding evidence related to the period because Asperger's Disorder is "a developmental disorder, not a condition which suddenly appeared after hearing."). Therefore, the doctor's letter with attached bone density exam results relates to the period.

The Court would therefore be required to consider this new evidence if it could, but it does not appear in the record and Piracha has supplied it.[9] Therefore, the Court denies Piracha's motion for summary judgment on her claim that the error made by the Appeals Council warrants remand. The Commissioner's cross-motion for summary judgment is granted.

## CONCLUSION

The Court concludes that the ALJ did not err in developing the record. The ALJ made one harmless error when making the adverse credibility determination, but her ultimate credibility determination is still valid. The Court also concludes that while the Appeals Council should not have rejected the new evidence offered by Piracha, the ALJ's decision is supported by substantial evidence. The Court therefore DENIES Piracha's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: April 18, 2018



JON S. TIGAR
United States District Judge

---

[9] The Commissioner found that the letter would likely "do no more than confirm impairments the ALJ already found to be severe." ECF No. 17 at 10. The Court does not adopt this speculative finding.

11